400 So.2d 926 (1981)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiff-Appellee,
v.
Charles DAVIS, et al., Defendants-Appellants.
No. 8115.
Court of Appeal of Louisiana, Third Circuit.
June 9, 1981.
Rehearings Denied July 21, 1981.
Morrow & Morrow, J. Michael Morrow, Opelousas, for defendants-appellants.
Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellee.
Before GUIDRY, SWIFT and LABORDE, JJ.
SWIFT, Judge.
In this highway expropriation case the State of Louisiana, Department of Transportation and Development (DOTD), has taken 9,954.2 square feet of the defendants' tract of land fronting on Eraste Landry Road in the city of Lafayette.[1] There appears to be a difference as to the area of the original lot, but the trial judge found that it contained 29,917 square feet and after the taking there remained 19,963 square feet, 1049 thereof being subject to a construction servitude.
The parties stipulated that the market value of the land at the time of the taking *927 was $1.41 per square foot. Therefore, the value of the part taken was $14,035.42. DOTD deposited into court $13,940.00 for the expropriated property.
In their answer the landowners asserted they were entitled to $1,000,000.00 for the land taken, expenses incurred, damages and attorneys' fees. Mainly, they sought reimbursement for loss of future rentals under a lease which they entered into some eight months prior to the institution of DOTD's suit wherein they agreed to construct a building for lessee's occupancy. The building was not completed when this suit was filed. The lease was for a term of six years, with options to purchase the property at the end of each year, and it contained an option to renew for an additional six year period. It further provided that the lease would expire if the property was expropriated and in such case the lessors would receive the full price of the taking without any deduction for the lessee's interest.
After trial the district judge awarded the defendants the following:

Market value of property taken: $14,035.00
Expenditures by owners-lessors: $34,351.28
Less Sale of Building: -15,000.00
 __________
Unrecovered expenditures: 19,351.28
Construction servitude: 330.00
Lease termination damage: 21,400.00
 __________
 TOTAL COMPENSABLE LOSS: $55,116.28

This amount, of course, was subject to a credit of $13,940.00 for DOTD's deposit which was withdrawn by the defendants. An attorney's fee of $8,235.26 (being 20% of the difference between the actual award and the amount originally deposited in the court) was also granted. The fee of the defendants' appraiser, LeRoy Cobb, was fixed at $1,000.00. The court costs were assessed to the plaintiff.
Defendants have appealed, contending that the award is inadequate in all respects. DOTD has answered the appeal, seeking the elimination of the $21,400.00 allowed for "lease termination damage."
At the hearing in this court DOTD's counsel stated that it had no objection to the amounts awarded for the property taken, the construction servitude and an additional amount for unrecovered expenditures up to an aggregate sum of $42,415.00 which was the estimate of just compensation of its highest appraiser.
The principal issue for determination by this court is whether or not defendants are entitled to an award for loss of future rentals under the lease that was terminated by this expropriation proceeding in addition to the market value of the property taken, severance damages, if any, and the unrecovered expenditures which they made prior to the extinguishment of such lease.
In the City of New Iberia v. Yeutter, 307 So.2d 393 (La.App. 3 Cir. 1975), this court held that a loss of future rentals was a consequential injury, such as loss of business profits, and was not compensable. However, the cause of action in that case arose prior to the effective date of our 1974 Constitution, in which Article 1, Section 4, specifically provides that "the owner shall be compensated to the full extent of his loss." Prior thereto the applicable provision of the Louisiana Constitution of 1921 simply required payment of "just compensation" for an expropriation.
*928 In State, Through Dept. of Highways v. Champagne, 356 So.2d 1136 (La.App. 3 Cir. 1978), the court said:
"At the outset, we determine that a proper interpretation of the provisions of LSA-Const. Art. 1, § 4 necessarily implies that the compensation due the defendant be in a monetary form. We consider the intent of the redactors of the 1974 Constitution to be that once the landowner has received compensation in an amount sufficient to place him in as good a position pecuniarily as he would have been, had his property not been taken, the landowner has received compensation `to the full extent of his loss'. Thus, we must reject the contention of counsel for defendant that under the new Constitution, a condemnee is entitled to whatever he subjectively believes to be his loss." [Emphasis added.]
In State Through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979), the supreme court said:
"In view of the constitutional requirement that they be compensated to the full extent of their loss, it is not constitutionally significant that the award to them will exceed the market value of the property used in their business operations. The very purpose of the constitutional language was to compensate an owner for any loss he sustained by reason of the taking, not restricted (as under the former constitution, see Dakin and Klein, Eminent Domain in Louisiana (1970) 70-72, 78-79, 95-96, 154-262), to the market value of the property taken and the loss of market value of the remainder, sometimes including the cost to cure such damagei.e., where (formerly) the award was based solely upon the physical value of the property and the economic injury to the property itself, but not including injuries to a business or the cost of moving it due to the taking." [Emphasis added.]
We therefore conclude that Yeutter is no longer the law in this respect and that a loss of future rentals as a result of expropriation is recoverable, provided the amount thereof has been properly proved and the owner-lessor has not been otherwise adequately compensated therefor. The most difficult problem in this case is the determination of just what loss the defendants actually sustained as a result of this partial taking and termination of the lease on their property. The trial judge found, and we agree, that there was no diminution of the value of their remaining land. Consequently, there was no severance damages thereto. However, it is obvious that the balance of the property is not sufficient for the building and to comply with the lease. Consequently, the lease terminated by its own terms on the date of the taking. Had the building been completed and occupied, it would appear that the lessors would be adequately compensated for their interest in the lease by capitalizing the rentals for its term and deducting therefrom the expenses incurred and to be incurred by the lessors. However, the actual duration of this lease was rather indefinite as it contained options to purchase at the end of each year by paying lessors' costs plus 15%. Also, the building was far from completion when it terminated.
While they also considered other methods, all three of the real estate appraisers calculated the compensation due defendants through the income approach. Their conclusions in this respect were as follows:

LeRoy Cobb: $87,000.00
Gene Cope: $42,415.00
Maurice Chappuis: $41,405.00

Each appraiser employed a different capitalization rate and Mr. Cobb does not appear to have made any deductions for the additional expenditures the lessors would have to make to complete the building and consummate the lease.
In arriving at the $21,400.00 award for "lease termination damage" the trial judge said:
"Concerning the law, although the appraisers in their various opinions have dealt extensively with the future projections on a discounted basis of the rentals and reversionary interests, it appears to the Court that the value of the thing lost *929 (the benefits to be received by lessor-landowner under the lease) must be considered in light of the provision contained in the lease granting a purchase option to the lessee by virtue of which the lessee could purchase the property at the end of one year at the then market value thereof, but in no event less than the cost of the land plus the cost of the improvements, plus 15% thereof. Both the landowner-lessor and the lessee concurred in such valuation. Since the facilities will not be completed and the market value is subject to vicissitudes of both a positive and negative basis due to unrelated circumstances, such as purchase money or mortgage money available, rates of interest, etc., it was not considered feasible to prognosticate a market value with a sufficient degree of specificity and certainty. Any such valuation attempted would be too speculative to be considered sufficiently proven for the purposes of compensation herein. Accordingly, the Court must then turn to the alternate value set of cost plus 15%. The concurrence in such alternate price is strong indication (especially in the absence of a determinable market price in the future) that the same represents a determination by both lessor and lessee of fair price and valuation for the leased property. Taking the valuation of the lease upon such basis and adjusting the part compensable by ratio of the expenditures actually made (land and actual expenditures made by lessor) over the total project costs, we would arrive at a ratio of (rounded off) 76." 158
(He found the lessors had spent $76,351.28 of an estimated total project cost of $158,562.00.) He then multiplied this fraction by one year's rent and 15% of the total cost of the project (both discounted at 10%) and got $21,387.02, which he rounded to $21,400.00, as the loss incurred by the lessors as a result of the termination of the lease by the expropriation.
We are unable to say that he was manifestly in error in this regard. Nor do we find that he abused his discretion in fixing the defendant's expert witness fee or the amount awarded for their attorney's fee.
For the foregoing reasons the judgment of the district court is affirmed at appellee's costs. The amount of the trial court costs and appellate court costs in this case are $1310.97 and $771.83, respectively, for which the state is cast.
AFFIRMED.
LABORDE, J., concurs in part and dissents in part.
LABORDE, Judge, concurring in part and dissenting in part.
I concur in the result reached by the majority that defendants are entitled to recover for future rental under the lease that was terminated by the expropriation proceeding; however, I am not convinced that the defendants have been compensated to the full extent of their loss as mandated by Article 1, Section 4 of our 1974 Constitution.
NOTES
[1] The court's reasons and the judgment include an award of $330.00 for a temporary construction servitude which is not mentioned in the pleadings. As neither party has complained thereof, we will not disturb same.