537 So.2d 792 (1989)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiff/Appellant,
v.
Robert A. TRAINA, et al., Defendant/Appellee.
No. 20232-CA.
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
Writ Denied March 27, 1989.
*793 Charles Soileau, Ginger Simonton, Rayne, for plaintiff/appellant.
Herman Castete, D.G. Brunson, Winnfield, for defendant/appellee.
Before HALL, MARVIN and JASPER E. JONES, JJ.
HALL, Chief Judge.
In this expropriation case, the State of Louisiana, DOTD, appeals from that part of the district court judgment awarding defendant, Robert A. Traina, the sum of $85,501.00 for loss of profits during the period of construction of a highway widening project. By answer to the appeal defendant complains of the trial court's failure to award attorney's fees and expert witness fees and asks that the judgment be amended to award such fees. For reasons expressed in this opinion, we amend the judgment to reduce the amount of the award to the defendant landowner and to award attorney's and expert witness fees.

I.
On November 14, 1984, the state filed a petition for expropriation of a narrow strip of land across defendant's property fronting on La. Hwy. 4 near Jonesboro in connection with a project to widen the highway. The State deposited the sum of $4,290 into the registry of the court as just compensation. Named as defendants were Robert A. Traina, as owner of the property, and Freddy Shows, as lessee. At the time the expropriation suit was filed there was in effect a lease of the property from Traina to Shows executed in May, 1983 for a five year term with a rental of $450 per month. Shows operated a business on the premises known as Jonesboro Saw Company which sold and serviced chainsaws and which also included a lawn and garden center. Prior to 1983 the business had *794 been owned and operated by Traina who sold the business to Shows when Traina decided to go into the real estate business full time. Shows had previously worked for Traina as manager of the business. Traina sold the business and its inventory to Shows for $35,000.00 which Shows was to pay him in monthly payments. Traina took a chattel mortgage on the inventory and equipment to secure payment of the sales price.
Construction on the project in front of Traina's property began in January, 1985 and continued until March, 1987, a period of more than two years. According to the testimony of Traina, which was unrebutted since the state put on no evidence, the concrete driveways or entrances into defendant's property were torn up and remained in bad condition throughout the construction period, substantially interfering with access to the property, making it difficult for customers to drive into the store, and causing a substantial loss of business.
Because of the loss of business and declining profits, Shows was unable to pay his debt to Traina and make a go of the business. In October, 1985 Traina and Shows agreed to terminate the lease and Traina reacquired the business, forgiving the balance of approximately $22,000 owed to him by Shows at that time. Thereafter, the business was operated by Traina under the name Traina Saw Shop.
In February, 1988 defendant Traina amended his answer originally filed in this suit to pray for business losses in the amount of $200,000.00 in addition to the $144,135.97 originally prayed for as just compensation. Shows never answered the plaintiff's petition and apparently has not participated in the proceeding since filing a motion to dismiss soon after the suit was filed.
The case went to trial in March, 1988 as between the state and defendant Traina. At the commencement of trial counsel for both parties stipulated that a compromise had been reached and that the state would pay Traina the sum of $35,000.00 as just compensation for the property taken and severance damage to the remainder, with each party to bear its own costs, expert witness fees, and attorney's fees insofar as they relate to that portion of the claim.
The case went to trial on defendant's claim for business losses as a result of the taking and the construction of the highway. In addition to Traina's testimony, the defendant offered the testimony of a CPA who had done the bookkeeping and tax returns for both Traina and Shows over the years. The CPA testified that from 1981 through 1984 the business operated by Traina and then Shows made an annual average net profit of $15,316. In 1985, the business showed a profit of $6,870 and in 1986 and 1987 showed losses of $15,589 and $8,560, respectively. The accountant projected that the business would not start showing a profit again until 1989 and would not be back to pre-construction levels until 1990. The total economic loss estimated by the accountant due to the highway project was $85,501.00, the amount accepted and awarded by the trial court. The state offered no evidence to rebut the testimony of the accountant.
The trial court found as a fact that during the period of construction access to defendant's property was severely impaired because of the construction, resulting in a loss of business profits and a total economic loss of $85,501.

II.
On appeal the state contends first that the defendant landowner is not entitled to recover business losses which were due to the construction activities generally as distinguished from the taking itself. The state argues that at all times during construction there was reasonable access from the highway to defendant's property and that defendant is not entitled to recover any losses occasioned by inconvenience resulting from the construction of the project generally. Alternatively, the state argues that if the defendant is entitled to recover damages the amount awarded is excessive. Defendant argues that on the date of the taking defendant Traina was the lessor of the property, was not operating the business *795 located on the property, and that at most Traina lost only the rental due by Shows for the balance of the term of the lease.
Property cannot be taken or damaged by the state except for public purposes and with just compensation paid to the owner. The owner must be compensated to the full extent of his loss. La. Const.1974, Art. 1, § 4. The constitution does not simply require that the owner of expropriated property be compensated for the market value of the property taken and severance damages to the remainder, but that he be placed in as good a position pecuniarily as he enjoyed prior to the taking. State Through Department of Highways v. Constant, 369 So.2d 699 (La.1979); State Through Department of Highways v. Bitterwolf, 415 So.2d 196 (La.1982).
The owner of land abutting a public roadway has a property right of access (ingress and egress) to the roadway. If a public authority substantially interferes with the owner's right of access, the owner has a cause of action under the constitution for just compensation. Conversely, where the means of access to the public roadway is not substantially impaired or access is impaired only on a temporary basis and/or the inconvenience to the owner is not peculiar to him but general to the public at large, no recovery is allowed. A public authority may divert traffic for purposes of public safety under its police power without incurring liability. Further, points of entry and departure to a public way may be restricted for legitimate traffic safety reasons. Dickie's Sportsman's Centers v. DOTD, 477 So.2d 744 (La.App. 1st Cir. 1985), writ denied 478 So.2d 530 (La.1985); Mills v. State through the Department of Highways, 416 So.2d 957 (La.App. 2d Cir. 1982), writ denied 420 So.2d 173 (La.1982).

III.
In this case the unrebutted testimony of the defendant, supported by photographs taken on several occasions during the period of construction, establishes that access to his property was substantially impaired throughout the more than two year period of construction. The concrete between the roadway and the business premises was broken out and never replaced by firm material until near the end of construction. Although access was never completely blocked the access was rough and was muddy during and after wet weather, making passage difficult and discouraging customers from attempting to enter and trade at the business located on defendant's property. Undoubtedly, the inconvenience caused by the construction generally up and down the highway played a part in the decline of the business operated on defendant's property, but the evidence is convincing that there was a substantial interference with access to this property specifically which was a significant contributing cause of the loss of business at the saw shop and lawn and garden center. Defendant is entitled to recover his economic loss resulting from the substantial interference with the right of access to his property.

IV.
At the time of the taking defendant Traina was the owner of the property and the lessor under a lease which had about three and one-half years remaining on its term. Traina was not the owner or operator of the business located on the property. He is entitled to recover the full extent of his economic loss caused by the taking and the construction but the loss must be measured by his status at the time of taking as lessor and not by his status as owner and operator of the business which he assumed after the taking and after construction commenced and profits of the business had declined. See and compare State Through Dept. of Highways v. Bitterwolf, supra.
Prior to the taking and construction, the most that defendant could expect to realize economically from his status as owner and lessor of the property was the rental payments due for the remaining term of the lease. A loss of rentals under a lease which was terminated by or because of an expropriation proceeding is compensable. State, Dept. of Transportation & Development v. Exxon Corp., 430 So.2d 1191 (La. *796 App. 1st Cir.1983), writ denied 437 So.2d 1155 (La.1983), writ denied 437 So.2d 1156 (La.1983); State, Dept. of Transportation & Development v. Davis, 400 So.2d 926 (La.App. 3d Cir.1981), writ denied 406 So.2d 611 (La.1981), writ denied 409 So.2d 611 (La.1981). We interpret the stipulation entered into at the commencement of trial as meaning the loss of rental income was not included in the compromise amount paid for the value of the property taken and severance damages.
There is no evidence in the record that Traina was not paid the monthly rental due through the time the lease was cancelled in October, 1985. When the lease was cancelled because of the construction project in October, 1985 there were 30 months left on the primary term of the lease. Prior to the taking and construction there was every expectation that the lease would remain in effect for the full term and that Traina would receive the rental due for the full term. The full extent of his loss as owner and lessor of the property was, then, rental at the rate of $450 per month for 30 months or $13,500. The present value of the future rental payments at the time the lease was terminated discounted at 8% (the discount percentage used by defendant's accounting witness in calculating present value of loss of future profits) is $12,091.50. The award to defendant for economic loss will be reduced to that amount.

V.
As to attorney's fees and expert witness fees claimed by the defendant, the trial court's reasons for judgment and the judgment make no mention of these items. Presumably they were rejected, but the record does not indicate that the trial court affirmatively exercised its discretion to deny these items. LSA-R.S. 48:453(E) provides that reasonable attorney's fees may be awarded by the court if the amount of compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment, not to exceed 25% of the difference of the award and the amount deposited. We believe that under the circumstances of this case the defendant is entitled to reasonable attorney's fees attributable to the claim for economic loss and we fix that award at $2,400.00.
The record discloses that the defendant's expert accounting witness charged $2,500.00 for his services. Although well-presented, this testimony was helpful to the court only to the extent that it verified a substantial decline of profits leading to the cancellation of the lease. We believe the defendant is entitled to have only a part of the fee of the expert witness taxed as cost of court, and we fix that fee at $500.00.

VI.
For the reasons assigned the judgment of the district court is amended to reduce that part of the judgment for business losses from the sum of $85,501.00 to the sum of $12,091.50, to award defendant attorney's fees in the amount of $2,400.00, and to fix expert witness fees at $500.00. As amended, the judgment is otherwise affirmed. Costs of the appeal are assessed one-half to the plaintiff and one-half to the defendant.
Amended, and as amended, affirmed.