hSAUNDERS, Judge.
A landowner appeals a trial court’s refusal to award him damages in this inverse condemnation proceeding. We affirm in part, reverse in part, and render to award appellant $1,000.00, plus attorney fees in the same amount.

FACTS AND PROCEDURAL HISTORY

This inverse condemnation suit was brought by Mr. John Taylor, the owner of two residential structures located at 430 Wheelock Street in Alexandria, Louisiana. He claims that both the rent houses and underlying property were adversely affected following 1-49 related construction in his neighborhood beginning in 1991 or 1992.
laAfter trial, the trial court ruled in favor of the State and awarded plaintiff-appellant no damages. It did so essentially on two grounds, one legal and one factual.
With respect to the former, the trial court concluded that in order to recover a landowner is required to establish abusive or exces *701 sive conduct on the part of the expropriating authority, and that damages, even substantial damages, arising from the diversion of traffic or inconvenience to the landowner, is not sufficient cause for damages in an inverse condemnation proceeding.
Second, as a factual matter, the trial court concluded that the property's loss of value arose solely from the owner's neglect, with no causal connection to the DOTD project.
From this judgment, the landowner ified this devolutive appeal in which he contests both grounds for the trial court's adverse judgment. While plaintiff agrees that a landowner is required to do more than demonstrate that he suffered damages like those generally sustained by owners of other similarly located property, he suggests that the trial court erred in requiring that he show abusive conduct on the part of the expropriating authority. Citing Reymond v. State, Through the Department of Highways, 255 La. 425, 231 So.2d 375 (1970), and Constance v. State, Through DOTD, 626 So.2d 1151 (La.1993), he argues that to recover, a landowner is required only to identify damages particular to his property. Second, plaintiff maintains that the trial court manifestly erred in siding with defendant's expert appraiser over his own expert in determining that it was the landowner's unrelated neglect and not the construction project that resulted in diminution of his property's value.
LAW AND ANALYSIS
A three-pronged analysis is utilized to determine whether a claimant is entitled to eminent domain compensation.
J~Under this analysis, we must first determine if a person's legal right with respect to a thing or an object has been affected. In other words, we must be able to identify a recognized species of private property right that has been affected, regardless of whether causes of action may exist on other theories; otherwise, it cannot be said there has been an exercise of the power of eminent domain. Second, if it is determined that property is involved, we must decide whether the property, either a right or a thing, has been taken or damaged, in a constitutional sense. If property is taken or damaged, one may say that there has been an attempted exercise of the eminent domain power. The final question then is whether the taking or damaging is for a public purpose under Article I, Sec. 4.
State Through DOTD v. Chambers Inv. Co., 595 So.2d 598, 603 (La.1992). (Citations omitted.)
A property owner is entitled to compensation when his property rights are adversely affected by public works, even when the State does not file expropriation proceedings. La. Const. Art. I, Section 4; Reymond, 231 So.2d 375; Constance, 626 So.2d 1151. The Chambers test set forth above also governs such inverse condemnation proceedings. Constance v. State, Through DOTD, 626 So.2d 1151.
Application of Chambers Analysis
Applying the first of the three Chambers inquiries, there can be no question that appellant's interest that he contends was adversely affected constitutes property, legally defined.
477: According to Louisiana Civil Code article
Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law.
The State does not contend that there are any legal limits or conditions that would prevent the claimant from renting out or selling the affected property. J~ccordingly, there is no question but that the first prong of the Chambers test has been satisfied. Chambers, 595 So.2d 598.[1]
*702 Likewise, there is no question but that the DOTD project was pursued to achieve a public purpose, the construction of Interstate 49 through Alexandria. Thus, this controversy does not concern the third prong of the Chambers test.
Consequently, we focus on the second prong of the Chambers test. This examination, which directs itself to the question of whether a landowner’s constitutionally protected property rights have been adversely affected, calls for consideration of the respective rights of neighboring landowners.
Accordingly, in order to decide whether the State caused any damage to the claimant’s right of ownership, we must determine whether the State’s construction activities resulted in inconveniences that must be tolerated by the claimant under Article 668[2] or, rather, resulted in | smore serious inconveniences or interference that may be suppressed under Article 667.[3]
Chambers, 595 So.2d at 604 (Footnotes ours).
The liability of a public body for property taken or damaged but not included within its actual expropriation activity must be limited to those instances where there is a physical taking or damage to that property or a special damage peculiar to the particular property and not general damage sustained by other property similarly located.
Reymond, 231 So.2d at 383. Stated a little differently:
The criterion for assessing the special damage suffered by a property owner because of the construction of a public project under eminent domain is whether that damage is not suffered by those in the general neighborhood — that is, whether the damage is peculiar to the individual who complains.
Reymond, 231 So.2d at 383-384.
Thus armed with the law, we consider in turn the question of whether appellant has suffered legally compensable damages for the two residential structures or the land itself.

Improvements

With respect to the former, plaintiff argues that the value and condition of his two rent houses have eroded, and that their reduction in value was caused by the DOTD project giving rise to this proceeding. According to his petition, plaintiff had owned the property since 1979 and had been constantly able to lease out the two structures for combined monthly rental revenue of $625.00 a month until DOTD began its work in mid-1991, when their prospects vanished due to reduced access to his property arising from I-49’s construction.
|6We need not reach the question of whether the trial court erred in determining that the dwellings in fact sustained no loss attributable to the construction. While appellant maintains that the value of his structures has been affected adversely by reduced traffic flow, he produces no evidence to suggest that *703 his property suffered any differently from that of Ms neighbors. In fact, the only evidence on the subject, offered by his expert appraiser, Ben Hargis, demonstrated that the entire neighborhood was equally affected by the neighborhood’s reduced traffic flow.[4] Therefore, for this reason alone, the trial court properly concluded that appellant was entitled to no relief for Ms neighborhood’s reduced traffic flow. Reymond v. State, Through Dept. Of Highways, 231 So.2d 375.[5] Land
Next, we examine whether appellant made Ms case with respect to the value of the land minus the improvements.
Although a landowner who is adversely affected may only recover damages in an inverse condemnation for grievances that are peculiar to Ms property, tMs is the extent of the landowner’s obligation. The landowner is not required to show that Ms property has been physically invaded. Rather, he may demonstrate that Ms property rights have been taken without any physical invasion.
Whenever a court allows compensation for governmental interference with an abutting owner’s street access, it is compensating for access as a property right separate from rights of possession. The same phenomenon occurs when compensation is given for state action that causes the owner a loss of riparian rights, an impairment of easements or servitudes the owner has on neighboring land, the violation of his restrictive covenant on nearby land, or loss of lateral support. The _J7courts are not always explicit about it; but impliedly, if not expressly, they recognize street access, riparian rights, easements and servitudes, restrictive covenants, and lateral support as forms of property.
Chambers, 595 So.2d at 602. (Emphasis added.) (Citation omitted.)
Similarly, while it may remain an open question as to whether an expropriating authority’s abuse of rights might afford relief to a landowner suffering even general property damages, it would seem clear that no such requirement exists for the landowner who can show that he has suffered particularized damages.

We are not prepared to say that, in all cases, a landowner must prove an abuse of right of ownership before he may suppress or recover for a violation of Article 667 by a neighbor. But we think that in a case, such as the present one, in which there is no allegation or evidence of personal injury or physical damage to property, it is consistent with the principles of the Civil Code and our jurisprudence to require proof of the presence of some type of excessive or abusive conduct to hold a landowner responsible under Article 667.

Chambers, 595 So.2d at 604-605. (Emphasis added.)
Because the evidence of tMs case clearly shows that plaintiff's property, but not that of his neighbors, was deprived of curb access,[6] he is entitled to compensation for Ms losses. In making Ms case, plaintiff was merely required to demonstrate that the State’s action had substantially interfered with Ms right of access to the roadway. Dept. Of Transp. & Dev. v. Traina, 537 So.2d 792 (La.App. 2 Cir.), writ denied, 540 So.2d 332 (La.1989). He should not have been required to establish an abuse of right on the *704 part of the State in order to recover. The trial court erred in concluding otherwise.

JQUANTUM

Although the record contains no specific estimates of damages resulting from plaintiffs lost curb access, it does contain some useful information. The record discloses that the property in question, that is, both the land and structures, were acquired for $4,000.00. However, the most useful information was obtained from defendant’s expert appraiser, John Mowad. While both plaintiff expert Hargis and defense expert Mowad concluded that the land itself (without the structures) was probably worth $3,000.00 before the construction project; Mowad, unlike Hargis who was never asked the question, was of the opinion that the property was worth only $2,000.00 after the project’s commencement.
Most importantly, Mowad attributed the $1,000.00 difference in value to the construction project. While Mowad attributed a portion of this $1,000.00 loss of value to the diminished access shared by the entire neighborhood this portion, we hold, is negligible in comparison to the land’s loss of value attributable to the property’s reduced curb frontage. Accordingly, we believe that claimant has proven, and is entitled to, an award of $1,000.00 for his property’s unique loss of curb access.
Finally, we are required to award attorney fees under La.R.S. 18:5111. Taking into account the amount of legal work performed, but observing that appellant was unrepresented for his oral argument, we conclude that attorney fees of $1,000.00, are reasonable and award same.

DECREE

For the foregoing reasons, the judgment denying plaintiff damages for allegedly lost structural values is affirmed. To the extent that the judgment also denied plaintiff damages for lost values arising, uniquely, from denied curb access, bit is reversed. Damages of $1,000.00 for this component, plus attorney fees of $1,000.00, are warranted and rendered.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. Indeed, the facts of this case bear striking resemblance to Chambers insofar as this prong is concerned:
Initially, we must determine whether the claimant's interest that it contends was adversely affected constitutes property within the purview of eminent domain law. It is undisputed that the claimant is the owner of the land that it avowedly seeks to develop. Ownership is the right that confers on a person *702 direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under conditions established by law. Lack art. 477 (1979). The State does not contend that there are any legal limits or conditions that would prevent the claimant from subdividing its land. Accordingly, the claimant has a right of ownership to use and enjoy its land by developing it as it may choose, including residentially. Because this right is recognized by law as a right that the claimant has with respect to the land it is a property right that is protected by the constitutional provisions.
State Through DOTD v. Chambers Inv. Co., 595 So.2d at 603-604.

. Art. 668. Inconvenience to neighbor
Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors’s [neighbor's] house, because this act occasions only an inconvenience, but not a real damage.

. Art. 667. Limitations on use of property
Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.

. "I suppose the other — as you go away from his on Wheelock they were equally affected in that block in that they don’t have the access that they originally had off Elliott Street.”

. Reymond is dispositive. In Reymond, a property owner affected by the construction of Interstate 10 in Baton Rouge was denied relief notwithstanding her property's being denied its former easy access and more favorable view.

. Prior to the Department of Transportation and Development (DOTD) works, Wheelock Street was a through street, but during and following the construction, it became a dead-end street immediately upon or just before reaching the lot upon which the two structures are situated. Lots to one side of plaintiff's were acquired by the State, whereas those on the other side did not lose curb access. This loss of curb access to the property deprived lessees of the ability to park directly in front of their residences, and prevents the owner from extending a driveway from the dwellings to the street without trespassing upon his neighbor’s property or the State’s right of way.