478 So.2d 702 (1985)
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellee,
v.
SHANNON-PAGE INVESTMENT COMPANY, et al., Defendants-Appellants.
No. 84-737.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1985.
*703 Stafford, Stewart and Potter, Grove Stafford, Jr., Alexandria, for defendants-appellants.
Edward A. Michael, Baton Rouge, for plaintiff-appellee.
Before FORET, DOUCET and YELVERTON, JJ.
FORET, Judge.
In this expropriation suit, the learned trial court has furnished us with excellent reasons for judgment, and we gratefully indulge ourselves in adopting them as our own, except for minor editorial variations.
"This expropriation suit was filed ... by the State of Louisiana, Department of Transportation and Development (DOTD), pursuant to L.S.A. R.S. 48:441 et seq., to take a parcel of land on which a warehouse building is situated ... owned by Shannon-Page Investment Company. The taking is in connection with the construction of I-49, a limited access highway to run through downtown Alexandria. The lessee of the subject property, Rapides Grocery Company, was originally a party to this suit but has voluntarily dismissed its claim for a leasehold interest without prejudice.
*704 "The DOTD deposited $86,500.00 in the Registry of the Court as its estimate of just compensation to the expropriatee. Shannon-Page answered the lawsuit alleging the $86,500. deposit to be inadequate and prayed for $350,000.00 as just compensation plus attorney's fees and costs. At the time of trial the parties stipulated that the taking was proper and that the value of the land at the time of taking was $47,000.00 (14,930 square feet at $3.15 per square foot). They also stipulated that the highest and best use of the subject property is commercial and that the square footage of the warehouse building is 20,900. Therefore, the only issues to be decided are the just compensation for the building, fees of expert witnesses, and attorney's fees to be awarded, if any.
"The subject building is an old two story commercial warehouse on the fringe of Alexandria's central business district. It is approximately 50 to 60 years old with 12 inch thick brick exterior walls and a frame made of wooden timbers. It has a loading dock which fronts on a side street, and a dock which fronts on a railroad track.... The building was originally used as an ice house. Subsequently, it was used as a furniture warehouse by Hemenway Furniture Company, Ltd., various members of the Hemenway family and Hemenway Company, Inc. until its 1972 sale to Shannon-Page Investment Company who leased the premises to Hemenway's for its continued use as a furniture warehouse. Shannon-Page subsequently leased the premises to Rapides Grocery Company and then to Rapides General Hospital who occupied the building at the time of taking. Thus, the property had been leased to various concerns since Shannon-Page acquired it in 1972.
"Shannon-Page urges the Court to award the replacement cost of the building without any deduction for depreciation in accord with the principles espoused in State [Through] Department of Highways v. Constant, 369 So.2d. 699 (La.1979); Monroe Redevelopment Agency v. [Succession of] Kusin, 398 So.2d. 1159 (La.App. 2nd Cir.1981); and City of Shreveport v. Standard Printing Company of Shreveport, Inc., 427 So.2d. 1304 (La.App. 2nd Cir.1983) and affirmed at 441 So.2d. 737 (La.1983). The DOTD submits that the principles of these cases apply only to situations in which there is an ongoing business on the expropriated property operated by the expropriatee and not to rental property held for investment purposes. This Court finds that, under the record in this case, an award of the fair market value will fully compensate the property owner and to extend Constant and its progeny to the present situation would not be proper.
"Article 1, Section 4 of the 1974 Louisiana Constitution requires that property owners be compensated to the full extent of their loss. As interpreted by our jurisprudence, the property owner must be placed in as good a position pecuniarily as enjoyed prior to the taking. State v. Constant, supra; State [Dept. of Hwys.] v. Bitterwolf, 41[5] So.2d. 196 (La.1982). In Constant the Court awarded the undepreciated replacement cost of a marina loading dock as necessary to place the owner in as good a pecuniary position as he enjoyed prior to the taking even though the award was greater than the fair market value. As the Court stated:
`The evidence so taken does not prove any other method by which the owners may be placed in as good a position pecuniarily as they enjoyed prior to the taking. Without the replacement of their loading area, the[ir] marina business operations will be substantially destroyed.' Constant, supra, at 702.
"In the present case, the property owner does not have an ongoing business which would be disrupted or `substantially destroyed'. Shannon-Page is free to reinvest the received proceeds in income producing property similar in nature to the property expropriated. The amount of compensation necessary to accomplish this is the fair market value of the expropriated property. Shannon-Page would have the value of the building, and could, therefore, purchase a similar building which would generate a *705 similar amount of income. This Court, therefore, finds that an award of the fair market value of the property according to its highest and best use would place Shannon-Page in the same financial position as it enjoyed prior to the taking.
"Shannon-Page urges in its trial brief that `market value' is no longer the standard by which the State can take property, and that the undepreciated replacement cost method of compensation is mandated by the new Constitution and recent appellate decisions. This is not a correct interpretation of the law. The property owner should be placed in as good a pecuinary position as he enjoyed prior to the taking by whichever method of calculating the loss is proper in a given case. Certain situations require that replacement cost be awarded in order to fully compensate the property owner, especially in unique situations in which an ongoing business is threatened. In others, the fair market value will fully compensate the property owner. As stated in Constant:
`We do not, by these rulings, announce any general principle that replacement cost is always the [most] appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business, nor that [the] depreciation of the former asset should never be considered.
`Generally, we assume, the landowners may be compensated fully by other approaches than by awarding [them] the replacement [cost] of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landowners' business operations on the site from which a part is taken. Likewise, in the usual situation the depreciated value of the asset taken will have some lessening effect on the award to landowner, since he may be fully compensated by the actual pecuniary value of the asset taken. For instance, the full compensation consitutionally provided does not require that the owner receive a new building to replace a dilapidated one which is expropriated.' Constant, supra, at 706.
"Shannon-Page also cited the Second Circuit opinions in City of Shreveport v. Standard Printing Company, supra, and Monroe Redevelopment [Agency] v. [Succession of] Kusin, supra, to support its contention that this Court should award the replacement cost of a new building. However, both cases as does Constant, involve situations in which the property taken was a necessary part of an ongoing business owned and operated by the expropriatee. Replacement value of the buildings was a necessary award to allow the property owners to continue their business operations without an undue loss, that is, to place them in as good a pecuniary position as they enjoyed prior to the taking. This is not necessary in the present situation, however, because Shannon-Page owns its property for the purpose of generating rental income and for any appreciation that might occur. To require Shannon-Page to move or place its investment in other places is not going to injure or disrupt an ongoing business owned by them. Therefore, this Court finds that undepreciated replacement cost is not the proper measure of compensation in this case.
"Since replacement cost is not the proper measure of compensation, this Court must decide what is the fair market value of the property, and by which appraisal method this can best be accomplished. Two real estate appraisers and a building contractorcost estimator testified for Shannon-Page. Three real estate appraisers and one cost estimator testified for the DOTD. All were ruled experts by the Court.
"All the experts agreed that there are three basic mehtods to value real estate which include the income approach to value, the cost approach to value, and market data approach to value. The income approach to value could be utilized in the present case because the subject is rental property. However, none of the experts seriously considered this method nor does this Court find this to be the most accurate *706 method to value the subject property. Therefore, this approach is rejected.
"Shannon-Page contends that the cost approach to value is the most accurate method of appraising the subject property. This approach requires the appraiser to deduct depreciation from the total replacement cost for defects, economic life of the building, and depreciation for outside economic influences. This Court finds that this is the most arbitrary of the three appraisal methods. First, the replacement cost must be estimated. As one expert pointed out, there is often a great disparity between the replacement cost of a particular building among contractors. Secondly, accrued depreciation is greater in older buildings, like the subject, making it difficult to accurately estimate the correct amount. These highly subjective judgments allow for a greater margin of error. In the present case, the replacement cost varies from Mr. Deloach's $612,043.00 ... to Mr. Rockhold's $396,900.00.... On top of this a somewhat arbitrary figure for depreciation must be applied to the disparate replacement costs. In light of the foregoing and the varying range of values found by the experts, this Court finds that the cost approach to value should not be used in the present case to arrive at fair market value.
"The market data or whole property approach to the valuation of real estate, while requiring some subjective adjustments for the differences between the subject property and comparable property, is the best method by which fair market value can be found in the present case. Mr. Kermit Williams, one of Shannon-Page's appraisers, came up with a figure of $229,055.00 as the fair market value of the entire property with $176,800.00 allocated for the building using the cost approach. He claimed to use the market approach only to substantiate the cost approach. However, in his report he did not attempt to analyze each comparable sale and synthesize this factual data into a conclusion independent of the cost approach. He simply stated that the `sale price per square foot' comparison `supports the findings of the cost approach' (D-1 at page 17). Suffice it to say that the Court finds [that] Mr. Williams' market data appraisal [is] based upon insufficient analysis making his conclusions tenuous, especially in light of the analysis and conclusions of the other appraisers.
"Mr. John Mowad, Shannon-Page's other appraiser, did not use a market data approach to value in his appraisal. Thus, further discussion of his testimony is unnecessary.
"The DOTD provided three appraisers all of whom supplied the Court with an appraisal using all three approaches to valuation of real estate. Mrs. Mikki Bordelon, Mr. Max Derbes, and Mr. Darrel Willet supplied the Court with conclusions, derived from the market data approach, of $88,000.00, $95,000.00 and $100,000.00, respectively. Mr. Derbes and Mr. Willet supplied the most in-depth analysis of the comparable sales in relation to the subject property. Both have been certified as M.A.I. appraisers. They relied heavily on the Alexandria Steam Laundry/Noles sale which this Court finds to be proper considering its similarities with and proximity to the subject. Mr. Willet is from the Alexandria area whereas Mr. Derbes is from the New Orleans area. Although Mr. Willet and Mr. Derbes are only $5,000 apart in their appraisals, this Court finds Darrel Willet's conclusions more persuasive because of his experience in and familiarity with property in central Louisiana.
"Therefore this Court finds that the fair market value of the subject building to be $55,216.00 in accord with Darrel Willet's appraisal. Adding thereto the stipulated land value of $47,000.00 makes the value of the whole taking $102,216.00.
"Considering the time and effort in preparation of trial and at trial as indicated by the record and by Mr. Stafford's business records in evidence, this Court awards as a reasonable attorney fee to Shannon-Page, 25% of the difference between the amount awarded and the amount deposited by the *707 DOTD which is $3,929.00. LSA R.S. 48:453.
"Considering the new constitutional provision and evolving jurisprudence, this Court finds that the landowner was justified in obtaining extensive expert assistance in its presentation of this case. Therefore to compensate these experts for their preparation work, reports and testimony, the Court awards the following fees to Shannon-Page's experts: Kermit Wayne Williams, $2500, John Mowad, $2,250, and Wayne Deloach, $1,250, all to be taxed as costs. All costs are to be assessed against the DOTD."
On this appeal, defendant claims that the trial court erroneously gave more weight to the opinions of plaintiff's experts than it did to the opinions of its, Shannon-Page's experts. It is established law in Louisiana that the weight which the trier of fact accords to expert testimony is determined by the expert's professional qualifications and experience, the facts and studies upon which his opinion has been based, and, in the case of land appraisals, his familiarity with the location involved. State, Department of Transportation & Development v. Estate of Aertker, 404 So.2d 316 (La.App. 3 Cir.1981); State, Dept. of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972); Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173 (La. 1973).
The record shows that all of the expert opinions were considered by the trial court and none were rejected summarily. For example, the trial court in its reasons for judgment makes several observations regarding the expert testimony. It is axiomatic and needs no citation of supportive jurisprudence that the acceptance or rejection of the testimony of expert witnesses is in the discretion of the trial court, who may either accept in part, reject in part, or reject entirely the testimony of expert witnesses. It is apparent from a reading of the trial court's reasons for judgment quoted above that it gave careful consideration to the testimony of the various experts and adeptly and correctly, from our review of the record, evaluated the testimony of all of the experts. In our view, the trial court correctly rejected the testimony of some of the experts. We find no merit to this assignment of error by the defendant.
Further, defendant Shannon-Page contends that the trial court erred in using the market value method instead of the replacement cost method of valuation. We adhere to the reasoning of the trial court on this issue and find no merit to this assignment of error.
Shannon-Page also urges that the trial court erred in awarding an insufficient amount of expert witness fees and attorney's fees. It is well settled that the trial judge has much discretion in setting expert witness fees. State, Dept. of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3 Cir.1969), writ refused, 254 La. 14, 222 So.2d 67 (1969). Finding no abuse of discretion by the trial court in either the award of expert witness fees or the award of attorney's fees, we reject these contentions of Shannon-Page.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Shannon-Page Investment Company.
AFFIRMED.