FORET, Judge.
This is an appeal in an expropriation suit. The Department of Transportation and Development (DOTD) appeals the trial court judgment awarding defendant, Salvator Campisi: (1) $14,000 for loss of rentals; (2) severance damages in the amount of $23,-450; (3) $40,000 replacement costs of service station building; (4) $15,000 for purchase of additional-property; (5) attorney’s fees amounting to 25% of $74,656; and, (6) expert witness fees. Defendant answered DOTD’s appeal and seeks an increase in the replacement value of the service station building from $40,000 to $69,459. DOTD additionally urges that Dua Morvant was improperly allowed to testify at trial.
FACTS
DOTD filed expropriation proceedings against Campisi and deposited $17,794 into the court registry. The deposit is comprised of $1,340 for the land taken, $4,022 for improvements taken, and $12,452 as severance damages. The date of the taking is May 27, 1980.
The property involved is located on the northwest comer of the intersection of U.S. Highway 167 and La. Highway 14.[1] DOTD expropriated a ten-foot strip along the easterly portion of defendant’s property in order to widen U.S. Highway 167. A service station building containing an upstairs apartment is situated on the property. Also located on the property is a two-story brick building, which is not involved in this litigation.
Campisi seeks compensation for the diminution in value of the service station occasioned by the taking. Additionally, he seeks compensation for the replacement cost of the structure, together with an alleged loss of rentals.
LOSS OF RENTALS
Defendant claims that as a result of the taking his lessee, Dua Morvant[2], *620 cancelled his lease of the service station. Morvant is an oil jobber, and he began leasing Campisi’s property in January of 1973. The lease provided for a one-year term with yearly renewals. The yearly renewals took effect unless either party gave the other thirty-day prior written notice, seeking lease termination. The rental was $175 per month- plus one penny per gallon of gasoline sold, up to ten thousand gallons.
Morvant leased the property from Campi-si until 1979. Morvant wrote Campisi a letter dated November 27, 1978, stating that he wished to cancel the lease, effective January 1,1979 as a result of the upcoming expropriation. Morvant’s lease cancellation took place one year and five months prior to the taking.
The record reflects that Morvant’s new location is more ideal (he sells twenty to twenty-five thousand gallons of gasoline as opposed to ten thousand gallons at the old location). Morvant testified that he operated a full-service station on defendant’s property. He testified that as a result of the economic conditions of the time, he had to switch to a self-service station, which he has been operating at his new location.
The lease provides for termination of the lease upon thirty days prior written notice. Morvant could have cancelled the lease at any time as a result of economic or other conditions. Furthermore, the record reflects that four other service stations went up within a four-block area of defendant’s property.
The trial court found $14,000 to be com-pensable for loss of rentals. However, the record indicates that the lost rentals were speculative because the amount of future rentals has not properly been proven. State, Dept. of Transportation & Development v. Manuel, 451 So.2d 659 (La.App. 3 Cir.1984); State, Dept. of Transportation & Development v. Davis, 400 So.2d 926 (La.App. 3 Cir.1981), writ denied, 406 So.2d 611 (La.1981), writ denied, 409 So.2d 611 (La.1981). As mentioned above, it is obvious that Morvant could have cancelled out at any time ... in fact, he did so one year and five months prior to the taking. Defendant has not proven that more probably than not Morvant would have stayed for any length of time, especially in light of Morvant’s testimony regarding the economic conditions of the time.
For these reasons, we believe the trial court erred in awarding $14,000 for loss of rentals and, accordingly, reverse that award and deny any amount for loss of rentals.
SEVERANCE DAMAGES
Defendant claimed as damages, the diminution in value caused to the existing service station structure. The trial court awarded $23,050 as severance damages. DOTD claimed this amount is excessive.
Severance damages are calculated as the difference between the market value of the remaining property immediately before and after the taking. State, Dept. of Transp. & Development v. Henry, 468 So.2d 1262 (La.App. 3 Cir.1985).
The record reflects that as a result of the taking, the service station is functionally obsolete. Cordell Hebert, defendant’s expert appraiser, has practiced in Abbeville and Vermilion Parish for many years. On the other hand, plaintiff’s expert, John Allphin, admitted his exposure to the Abbeville market is limited. The trial court used the figure arrived at by Hebert because of his area market exposure.
We find no manifest error in the trial court’s award of severance damages. The trial judge’s award is a question of fact. State, Dept. of Transportation & Development v. Shannon-Page Investment Co., 478 So.2d 702 (La.App. 3 Cir.1985); City of Shreveport v. Standard Printing Co., 427 So.2d 1304 (La.App. 2 Cir.1983); State, Dept. of Transportation & Development v. Davis, 394 So.2d 641 (La.App. 1 Cir.1980). Therefore, the judgment of the trial court regarding the amount awarded as severance damages is affirmed.
REPLACEMENT COST OF SERVICE STATION
In addition to severance damages, the trial court awarded the replacement *621 cost of the service station and a sum for the purchase of an additional lot. In awarding such sums, the trial court stated its reliance upon State Through Dept. of Highways v. Constant, 369 So.2d 699 (La. 1979).
In her reasons for judgment, the trial judge stated that:
“There is no dispute that the service station, after the taking, is functionally obsolete. For the service station to be operated at the current location, the building would have to be demolished because the current site cannot meet required State and local safety codes.”
The record reflects that it would be impossible to move the building without demolishing it. Defendant urges that he should be placed in as good a pecuniary position as he enjoyed prior to the taking by awarding the full replacement cost of the service station as compensation.
We do not believe that this case presents the situation in which the property in question is unique in nature and the location so indispensible to the conduct of a business operation on the site from which a part is taken that replacement costs should be the measure of awarding defendant compensation for the taking of his assets. The fair market value of the property is the proper measure of compensation in this case. Plaintiffs expert, John Allphin, provided the court with a valuation of $40,000. Defendant provided the court with a valuation of $69,459. The trial court ruled that defendant’s opinion on this point reflected a value which was not calculated as of the date of the taking. Consequently, the court found plaintiffs valuation acceptable since it was valued as of the date of the taking.
The problem with awarding any sum as damages for the cost of the service station is that the record does not support defendant’s contention that he had an ongoing business there. Defendant testified that he was not the owner of the gas pumps on the site. Furthermore, the record is devoid of evidence substantiating a business loss.
Defendant alleged that he “had to” purchase an additional lot at the rear of his property because the current site, after the expropriation, has no room for pumps. A utility pole and water hydrant now stand where prior traffic could ingress and egress. David Bernard, an expert in architecture, ascertained the cost to replace the service station. He testified that in order to continue to operate a service station, defendant would have to tear down the existing structure and build one further back off the highway because of state and local safety codes. Defendant, in fact, had purchased an additional lot at the cost of $15,000.
We overrule these awards comprising replacement costs for the reason that the special circumstances present in cases such as Constant, supra, are not present in this case. Defendant has claimed that only after being awarded replacement costs will he be in an equivalent position, i.e., having a fully operable service station on his property. However, the record does not reflect that contention. For these reasons, the entire award for replacement costs is denied.
ATTORNEY’S FEES
The trial judge has discretion in its award of attorney’s fees. La.R.S. 48:453 E. provides for an award of attorney’s fees equaling no more than 25% of the difference of the amount deposited in the registry and the amount awarded as damages at trial. In this case, the amount deposited into the registry of the court by DOTD is $17,794, and the amount awarded by us on this appeal is $28,812, for a difference of $11,018. Pursuant to the dictates of R.S. 48:453 E., we award 25% of $11,018, or $2,754.50, as attorney’s fees.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed insofar as it awarded monies for loss of rentals, replacement cost of service station building, purchase of an additional lot, and for attorney’s fees in the amount of 25% of $74,655. In all other respects, the judgment of the trial court is affirmed, for a total damage *622 award of $28,812.** The award of attorney’s fees is hereby fixed at $2,754.50, which is 25% of $11,018, the difference between $28,812 actually awarded by this court and $17,794, the amount deposited in the registry of the court by the Department of Transportation & Development when it filed the expropriation proceedings.
Costs of this appeal are assessed against defendant, Salvatore J. Campisi. Costs at the trial level in the amount of $446.75 are assessed against plaintiff, State of Louisiana, Through Department of Transportation & Development.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.

. A more accurate property description is Lots 1 and 2 of Block 2, Westside Park Addition, City of Abbeville, Louisiana.

. Plaintiff alleges it was not aware that Dua Morvant would be testifying as a defense witness. The record contains a pre-trial order listing Dua Morvant as a witness. A certificate of service for the pre-trial order appears in the record. Morvant was properly allowed to testify-

 The amount of expert witness fees awarded is not included in this figure and is not at issue in this appeal.