571 So.2d 742 (1990)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellee,
v.
Bernard Bennett LOBEL, Defendant-Appellant.
Nos. 21990-CA, 21991-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
*743 Brook, Morial, Cassibry, Fraiche & Pizza by Anna E. Dow, Baton Rouge, for defendant-appellant.
Bertrand & Soileau by Ronald J. Bertrand, Charles E. Soileau, Rayne, for plaintiff-appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
SEXTON, Judge.
These consolidated lawsuits involve the expropriation of two parcels of land by the plaintiff, the State of Louisiana, Department of Transportation and Development (DOTD), for the construction of Interstate Highway 49. The defendant, Bernard Bennett Lobel, the former owner of the property, appeals the quantum awarded as compensation for the expropriation. We affirm.
Mr. Lobel owned two tracts of land upon which he operated 28 rental houses of the type commonly referred to as "shotgun" houses, 8 units in the tract designated as Parcel No. 70-3 (at issue in appeal No. 21,990-CA) and 20 units in Parcel No. 69-5 (at issue in appeal No. 21,991-CA). On October 1, 1987, DOTD expropriated the entirety of Parcel No. 70-3 and a portion constituting 16 of the 20 rental units of Parcel No. 69-5. DOTD deposited into the registry of the court $48,555, its estimate of Mr. Lobel's loss from the expropriation of Parcel No. 70-3, and $78,881, its estimate for Parcel No. 69-5.
At trial the parties stipulated that the deposit of $48,555 accurately reflected the market value of Parcel No. 70-3. The parties also stipulated that the market value of the expropriated portion of Parcel No. 69-5, together with the severance damage to the remainder of that tract, was $80,388, or $1,507 more than DOTD had deposited. The primary issue at trial, as it is on appeal, was whether Mr. Lobel was entitled to any amount over the stipulated market value in order to fully compensate him for the expropriation.
The trial court rendered judgment ordering DOTD to pay Lobel $9,300 in addition to the $127,436 deposited, plus interest, court costs, $3,500 in expert witness fees, and attorney fees in the amount of $2,325.
The trial court's written opinion reveals that the $9,300 additional compensation award was based on the stipulated market value of the properties, which was $1,507 in excess of the amount deposited, plus an additional $7,793. This additional sum represented the rental income lost by Lobel when several tenants vacated the premises in anticipation of, but prior to the actual date of the expropriation.
The trial court's written opinion noted that it did not consider the rental property a unique and necessary part of an ongoing business, considering it to be more in the nature of an investment. Therefore, the trial court found that the market value of the property was appropriate compensation, specifically rejecting Lobel's argument that he should have been awarded replacement value to fully recompense his lost rental income.
On appeal, Lobel's initial assignment of error is that the trial court erred in finding that market value, rather than replacement cost, was the proper measure of compensation. Lobel disputes the trial court's finding that the rental property was more in the nature of an investment, rather than an ongoing business. Further, Lobel argues, by their nature and location, these rental properties were unique and therefore indispensable to his business. Thus, he argues the appropriate measure of his loss should be the replacement cost of the rental property to fully remedy the loss of his income stream. Lobel's expert real estate appraiser testified that it would take $200,800 in replacement property to reestablish his former net income.
Property may not be taken or damaged by the state except for public purposes and with just compensation to the owner. In every expropriation the owner shall be compensated to the full extent of his loss. LSA-Const. Art. 1, § 4. The expropriatee is not limited to the market *744 value of his property, if such does not fully compensate his loss. State, Department of Transportation and Development v. Dietrich, 555 So.2d 1355 (La.1990); State Department of Highways v. Bitterwolf, 415 So.2d 196 (La.1982); State Department of Highways v. Constant, 369 So.2d 699 (La.1979).
In Constant, the Louisiana Supreme Court was first confronted with the issue of whether it was constitutionally appropriate to award an expropriatee an amount sufficient to replace his expropriated property where such an amount was in excess of the market value of the property. After determining that the constitution did permit such an award, the court turned to whether the replacement value was the correct amount, under the facts of the case, to fully compensate the landowners.
The state had expropriated the entire loading and parking area of the defendants' marina operation. The land expropriated constituted the only "dry" or compacted land (as opposed to "wet" or semimarsh land) in the immediate vicinity. This dry land was essential for loading and parking, especially for various pieces of heavy equipment. The dry land was therefore indispensable to the defendants' marina operations. The ultimate result of the taking was the virtual destruction of the commercial viability of the remainder or unexpropriated portion of the marina. In light of the unique situation involved, the supreme court found that the market value of the expropriated land was insufficient to fully compensate the defendants. The defendants were instead awarded an amount which would enable them to replace the expropriated parking and loading area.
While awarding the defendants the replacement value of the expropriated property, the court intimated that an award of replacement value was the exception, not the rule.
We do not, by these rulings, announce any general principle that replacement cost is always the most appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business....
Generally, we assume, the landowners may be compensated fully by other approaches than by awarding them the replacement cost of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landowners' business operations on the site from which a part is taken....
State Department of Highways v. Constant, supra at 706.
Although there have been several reported cases in which replacement cost, not market value, was found to be appropriate compensation for an expropriation, these cases, like Constant, have involved unique situations in which the businesses would likely have been destroyed, or at least affected to a substantially detrimental extent, were the expropriated property not replaced.
In Monroe Redevelopment Agency v. Kusin, 398 So.2d 1159 (La.App. 2d Cir. 1981), writ denied, 405 So.2d 530 (La.1981), there was uncontradicted evidence that the expropriated warehouses and showroom were an indispensable part of the defendant's furniture business. This court found no error in the award of replacement value, although this was an amount in excess of market value.
Similarly, in City of Shreveport v. Standard Printing Company of Shreveport, Inc., 427 So.2d 1304 (La.App. 2d Cir.1983), writ denied, 434 So.2d 1106 (La.1983), writ granted, 435 So.2d 426 (La.1983), writ recalled, 441 So.2d 787 (La.1983), this court affirmed an award in excess of market value to enable defendants to replace their printing and office supply business. In that case it was found to be essential to the future existence of the business that the office building on the expropriated property be relocated in Shreveport's central business district, the area from which the company derived 90 percent of its customers. A move away from the central business district and thus away from 90 percent of the customers would have had a significant adverse impact on the business.
*745 Implicit in the cited cases is a finding by the courts that compensation constituting merely the market value of the expropriated property would likely not have prevented the defendants from losing their businesses. Some unique factor of the expropriated property made such property indispensable to the defendants' businesses and rendered the strict market value of the properties insufficient compensation. To place the defendants in as nearly similar a position as they enjoyed prior to the expropriation therefore required an amount sufficient to enable them to replace the indispensable property and thereby avert the probability that they would lose their businesses.
In the instant case, we find no error in the trial court's determination that the evidence presented failed to show by a preponderance of the evidence the unique nature of the expropriated rental properties such that awarding Mr. Lobel the stipulated market value for these properties would presumably have resulted in the destruction of, or substantial injury to his business. We find ample evidence in the record of similar types of rental units which had similar rental rates, thereby precluding a finding of uniqueness.
The factors espoused by Mr. Lobel simply fail to support his contention that these shotgun houses were truly unique. Although the expropriated rental units did have a high degree of tenant stability, the advanced age of many of the tenants implies that this stability would shortly and rapidly have begun to decline. Although the units were well-maintained, the houses were some 50 years old. Mr. Lobel admitted to the increased need for maintenance as the houses became older.
Additionally, we note that Mr. Lobel described his operation of the expropriated rental houses as merely one of his primary sources of income. Mr. Lobel acknowledged that he is a real estate developer and admitted owning, in addition to the expropriated rental property, three small apartment complexes comprising 27 total rental units. Mr. Lobel himself referred to the expropriated rental units, not as his business, but as an investment.
In short, we do not find these rental units to be of the significantly unique nature envisioned in Constant, Kusin, and Standard Printing, such that the failure to replace them would have a significant adverse impact on Mr. Lobel's business. Rather, we find this case more in line with cases in which market value was found to be the appropriate measure of compensation. See State, Department of Transportation and Development v. Shannon-Page Investment Company, 478 So.2d 702 (La.App. 3rd Cir.1985) (market value appropriate to compensate defendant for expropriated rental warehouse), and State, Department of Transportation and Development v. Campisi, 509 So.2d 618 (La.App. 3rd Cir.1987) (market value appropriate to compensate defendant for expropriation of leased service station). We find no error in the trial court's award of the stipulated market value of the expropriated property.
Lobel next argues that the trial court was in error in failing to award him $2,857 in damages for plumbing repairs, excessive water bills, and other miscellaneous repairs. These repairs were allegedly necessitated by vandalism which occurred when Mr. Lobel's tenants moved out in anticipation of, but prior to the actual date of expropriation. The trial court's reasons for judgment takes note of this claim for damages as estimated by the defendant's appraiser, Mr. McCormick. However, in the next sentence, which calculates the total award of compensation, this item is not included. Importantly, the trial court judgment does not include this item. Where there is a demand for an item of damages and it is not included in the judgment, it is considered tacitly rejected, even though it may have been allowed in the trial court opinion. Hebert v. Hebert, 351 So.2d 1199 (La.1977).
In the instant case, it is difficult to determine from the opinion whether the trial judge intended to allow this award and simply made an error in calculation, or whether the judge was simply making reference to it.
*746 As this item of damages was not included in the judgment, we thus must conclude that the trial court rejected this item of plaintiff's damages. We do not find this conclusion clearly wrong in light of the inconclusive evidence regarding the cause (specifically the connexity between the announced plans for expropriation and the vandalism), the extent, and the reasonableness of the repair of these damages presented at trial.
The judgment of the trial court is therefore affirmed at appellant's cost.
AFFIRMED.