MADELEINE M. LANDRIEU, Judge.
hSt. Bernard Parish Government appeals a judgment from the trial court which awarded the plaintiff, Mr. Glenn Sandrock, $102,036.00 in property damage loss, $34,272.00 in lost rent, and $25,000.00 in general damages. For the reasons that follow, we find that the trial court did not err in finding the defendant liable, but that the trial court did err in its calculation and award of damages. Accordingly, we affirm in part, reverse in part, and render.
FACTS AND PROCEEDINGS BELOW
This is an appeal from a lawsuit filed by Mr. Sandrock against St. Bernard Parish Government (“SBPG”) for damages after SBPG demolished a duplex located at 3116-18 Stacie Drive, one of approximately forty rental properties Mr. Sandrock owned in St. Bernard Parish.
Following Hurricane Katrina, the St. Bernard Parish Council passed a series of ordinances which required property owners to make timely repairs to their storm-damaged properties. Ordinance # 634-12-05, passed in the weeks after the hurricane, authorized the parish “to enter private property to, in the interest of | ¡.public *1042 health and safety, alter or demolish structures and remove debris found on the property.” In 2006, the parish council passed Ordinance #663-07-06, which set forth requirements of owners of storm-damaged homes.[1] The ordinance required “the owner of any structure that is destroyed or damaged beyond habitability by fire, storm, natural disaster, or other natural or man made event” to accomplish the following: (1) clear the property of “all debris, mud, sludge, sediment, and other health hazardous material” within five days of being able to initially access the property; (2) secure all “exterior windows, doors, and all exterior other openings in a structure’s exterior walls, roofs, eaves, and floors” within the next two days; (3) install windows and doors within sixty days of boarding up the exterior; and (4) complete repairs to exterior walls and roofs within 120 days.
On December 5, 2006, the parish council passed Resolution # 162-09-06, which condemned 3,651 homes that were designated “dangerous to public health and safety” for failing to comply with the ordinances. Mr. Sandrock’s property on Stacie Drive was on this condemnation list. In accordance with the resolution, a demolition placard was posted on the property informing Mr. Sandrock that the structure had been declared a “public health and safety hazard” and that “involuntary demolition” had been ordered. A condemnation notice was also posted at the Government Building and Courthouse and on the SBPG website. It was also mailed to and received by Mr. Sandrock.
laOn January 12, 2007, within the time period provided in the condemnation notice, Mr. Sandrock signed a demolition appeal application. The application for appeal provided, in pertinent part,
Should an appeal be granted, said property must be gutted, cleaned and secured with proper yard maintenance within seven (7) days of the date of granting of said appeal. Upon failure to comply with all of the above referenced requirements within the seven (7) day time period, the granting of said appeal will be revoked.
Mr. Sandrock’s appeal was granted the same day.
Ten days after the appeal was granted, an SBPG employee inspected the property and determined that Mr. Sandrock’s property had not been cleared of debris, had not been secured, and the lawn of the property had not been maintained. Because the appeal requirements were not met, the appeal was revoked, and the property was approved for demolition. There is no evidence in the record to suggest that notice of this inspection or notice of the revocation of the appeal was sent to Mr. Sandrock.
Soon thereafter, in March of 2007, Mr. Sandrock applied for and received from SBPG a “Rebuilding Permit,” and water service was restored to the Stacie Drive property. On January 15, 2008, nearly one year later, Barowka and Bonura Engineers and Consultants, a company hired by SBPG, inspected the property and took photographs which showed that the property was not cleaned and secured.
Mr. Sandrock testified at trial that sometime in January of 2008, he had received a phone call from someone who told him that SBPG was preparing to tear down the property. The caller told Mr. Sandrock that ribbons had been placed Daround the house and that the gas meter had been pulled. Mr. Sandrock testified that he had “immediately, as quickly as [he] could — it might have been a few days, a week or two days” gone to the Permits office to check on the property. Mr. San- *1043 drock testified that at that point, , he was told that there were no problems with the property. He further testified that he also was told to fill out a second appeal application, which he did. This application was accepted by an SBPG employee on February 6, 2008. Unbeknownst to Mr. San-drock and apparently unbeknownst to the SBPG employee, Mr. Sandrock’s property had already been demolished both before he visited the office and the application was granted.
Mr. Sandrock timely filed a petition for damages against SBPG seeking damages for:
(1) Lack of due process and failure to properly notify the petitioner of the demolition;
(2) Failure to follow the defendant’s own appeals procedures;
(3) Failure to follow the procedural protections afforded to properties (sic) owners by La. R.S. 33:4761 et seq.;
(4) Failure to pay just compensation pursuant to Louisiana Constitution, Article 1, Section 4;
(5) Trespass;
(6) Unauthorized entry;
(7) Unauthorized “taking;”
(8) Violation of local and State laws and ordinances; and
(9) Any other tort identified during the pendency of this litigation.
After a trial on the merits, the trial court found that SBPG was grossly and willfully negligent and awarded Mr. Sandrock $102,036.00 in property damage loss, $34,272.00 in lost rent, and $25,000.00 in general damages. This appeal follows.
[..ASSIGNMENTS OF ERROR
SBPG asserts the following assignments of error: (1) the district court erred in finding SBPG grossly and willfully negligent in demolishing Mr. Sandrock’s complex; (2) the district court erred in its calculation of property damage loss suffered by Mr. Sandrock; (3) the district court erred in awarding Mr. Sandrock lost rent; and (4) the district court erred in awarding Mr. Sandrock general damages.
DISCUSSION

Statutory Immunity

In this assignment of error, SBPG contends that it is immune from liability pursuant to La. R.S. 9:2800.17. This statute was passed .in 2006 and intended to apply retroactively to August 29, 2005 and prospectively through August 28, 2008. It provided that
[t]he state, or any political subdivision thereof, or any public entity, ... engaged in any operational decisions or activities in the aftermath of Hurricanes Katrina and Rita shall not be civilly liable for ... any ... damage to property as a result of such activity, except in the event of gross negligence or willful misconduct.
La. R.S. 9:2800.17. SBPG asserts that it was not grossly negligent in its actions, and, therefore, cannot be held liable for its actions.
In its reasons for judgment, the trial court found that “the plaintiff proved the defendant’s actions were grossly and willfully negligent in demolishing the home.” A finding of gross negligence or willful misconduct is a factual determination. It is well-settled that a court of appeal may not set aside the factual findings of a trial | .court absent “manifest error,” or unless they are clearly wrong. Resell v. ESCO, 549 So.2d 840, 844 (La.1989).
Gross negligence has been defined by the Louisiana Supreme Court as “ ‘want of even slight care and diligence’ and the ‘want of that diligence which even careless men are accustomed to exercise.’ ” Ambrose v. New Orleans Police Dep’t Ambu *1044 lance Serv., 93-3099, p. 4 (La.7/5/94), 639 So.2d 216, 219, quoting State v. Vinzant, 200 La. 301, .7 So.2d 917 (La.1942). “There is often no clear distinction between such [willful, wanton, or reckless] conduct and ‘gross’ negligence, and the two have tended to merge and take on the same meaning.” Id., quoting Falkowski v. Maurus, 637 So.2d 522 (La.App. 1st Cir.1993).
At trial, Mr. Sandrock testified that after Hurricane Katrina, he began the process of rehabilitating his properties ih St. Bernard Parish with the help of various loan programs, including the Road Home Program. He testified that he would not receive a loan for a home until the rehabilitation was complete. He would then use that money to rehabilitate the next .home.
Mr. Sandrock testified that he had filed his demolition appeal, and it had been accepted, on January 12, 2007. He did not receive any correspondence from SBPG that his appeal had been revoked. Further, he introduced into evidence the “Rebuilding Permit” that SBPG had issued to him on March 28, 2007, and evidence that water service had been returned to his property after the date SBPG contends his appeal was revoked.
_JjMr. Sandrock testified that after his appeal was granted, the first indication he had that his property was being considered for demolition was in a phone call he received in January of 2008. Mr. San-drock could not recall who had called him. However, after receiving this call, Mr. Sandrock went to the Permits office to check on the property and was informed that there were no problems with the property. This information was at best, misleading, and at worst, false, considering that his property was likely scheduled for demolition at that time. He then was told to fill out a second appeal application, which reinforced the idea that his property was okay. Most egregious, however, was SBPG’s acceptance of that application on February 6, 2008, after the property had been demolished.
Under the facts presented here, we cannot say that the trial court erred in finding that the inconsistent actions of SBPG relative to this property constituted gross negligence or willful misconduct. This assignment of error is without merit.

Damages

In its remaining assignments of error, SBPG contends that the trial court erred in its calculation and awarding of damages to Mr. Sandrock. Louisiana Civil Code article 2324.1 provides that “[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.” An award determination, if any, is a finding of fact. Ryan v. Zurich American Ins. Co., 2007-2312, p. 7 (La.7/1/08), 988 So.2d 214, 219. Findings of fact are reviewed under the manifest error standard of review. Rosell, 549 So.2d at 844. Under this standard, we “must review the record in its entirety and (1) find |sthat a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.” Bonin v. Ferrellgas, Inc., 2003-3024, pp. 6-7 (La.7/2/04), 877 So.2d 89, 94-95 (citations omitted). We discuss each award in turn.

Property Loss

The trial court awarded Mr. San-drock $102,036.00 as compensation for the demolition of the property. Evidence introduced at trial showed that the construction cost to build the home, after the demolition, was $162,036.00. Mr. Sandrock testified that if the home had not been demolished it would have cost him $60,000.00 to rehabilitate the property. *1045 The court awarded the difference between the two figures, $102,036.00.
SBPG contends that the market value of the property, not the replacement cost, is the proper measurement of damages for the demolition of rental property. We agree.
Louisiana Constitution Article I, Section 4 provides that when property is taken or damaged by the State for public purposes, the owner shall be compensated to the full extent of his loss. Our jurisprudence has held that the compensation is not limited to the fair market value of the property if that amount does not fully compensate the loss. See, State, Dept. of Transp. and Development v. Dietrich, 555 So.2d 1355 (La.1990); State Dept. of Highways v. Bitterwolf 415 So.2d 196 (La.1982); State Department of Highways v. Constant, 369 So.2d 699 (La.1979).
lain its judgment, the trial court cited State Dept. of Highways v. Constant, supra, in which the Louisiana Supreme Court held that, in that case, the replacement value of the expropriated property was the appropriate award to fully compensate the plaintiff. In Constant, the State had expropriated the entire loading and parking area of the defendants’ marina operations, which made the entire marina operation commercially unviable. The Supreme Court did not “announce any general principle that replacement cost is always the most appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business, nor that the depreciation of the former asset should never be considered.” Id. at 706. The Court went on to say that it “assume[s] the landowner may be compensated fully by other approaches ..., especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landowners’ business operations on the site from which a part is taken.” Id.
SBPG contends that there is nothing “unique in nature and location” about this property that would make the replacement value the appropriate damage award. SBPG cites State Dept. of Transp. and Development v. Lobel, 571 So.2d 742 (La.App. 2d Cir.1990), on this point. In that case, the plaintiff owned property on which he operated twenty-eight shotgun rental homes. The property was expropriated by the State. The trial court awarded the plaintiff the stipulated market value for the property. The court of appeal affirmed, stating that it found “no error in the trial court’s determination that the evidence presented failed to l1nshow ... the unique nature of the expropriated rental properties such that awarding [the plaintiff] the stipulated market value for these properties would presumably have resulted, in the destruction of, or substantial injury to his business.” Id. at 745.
In the present case, Mr. Sandrock owned approximately forty rental properties in St. Bernard Parish prior to Hurricane Katrina. The hurricane caused substantial damage to his properties. There is nothing unique about this specific property that would have resulted in a substantial injury to Mr. Sandrock’s business.
We find that the trial court abused its discretion in awarding damages based on the replacement value of the house instead of using market value. The trial court accepted into evidence two appraisals of the property from the date of the demolition, one appraisal of the building and the land, valued at $27,500.00; and one of the land alone, valued at $3,000.00. It is uncontested that Mr. Sandrock still owns the land. Therefore, Mr. Sandrock is awarded $24,500.00 for the property damage. This award puts Mr. Sandrock in the same position he was in prior to the demolition.

*1046
Lost Rental Income

Mr. Sandrock was awarded $34,272.00 for lost rent. Mr. Sandrock testified that in order to receive money from the Road Home Program, he had to rent the property to a low-income tenant at a monthly rate of $714.00 per each side of the duplex. Mr. Sandrock testified that he received a Certificate of Occupancy on March 5, 2010. Mr. Sandrock believed the property could have been rehabilitated Inby March of 2007 had if not been demolished by SBPG.[2] Mr. Sandrock testified that SBPG’s demolition of the property caused him to lose twenty-four months of rent, or $34,272.00. The trial court found that Mr. Sandrock proved this loss and awarded him this amount.
There is no evidence, aside from the testimony of Mr. Sandrock, that the property would have been rehabilitated and occupied in March 2008. The record is clear that Mr. Sandrock was using money obtained through various loan programs to begin construction on one house after another house had been completed. Photographs taken on January 15, 2008, show that this particular property was still completely gutted. We find that the trial court erred in awarding Mr. Sandrock two full years of lost rent and find that the record established that Mr. Sandrock is entitled to lost rent for only one year, or $17,136.00.

General Damages

The trial court awarded $25,000.00 in general damages, but did not discuss its reasons for the award. General damages are those damages “which may not be fixed with pecuniary exactitude.” Duncan v. Kansas City Southern Railway Co., 2000-0066, p. 13 (La.10/30/00), 773 So.2d 670, 682 (citations omitted). In reviewing general damage awards, we are “not to decide what [we] consider to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.” Id.
hJn his petition, in addition to property damage and lost rent, Mr. San-drock prayed for “mental damages, including, but not limited to, mental anguish, emotional distress, and inconvenience and aggravation.” An award for mental anguish resulting from property damages is available only in one of the following situations:
(1) When property is damaged by an intentional or illegal act; (2) when property is damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) when property is damaged by acts constituting a continuing nuisance; or (4) when property is damaged when the owner is either present or nearby and suffered a psychic trauma as a direct result.
Blache v. Jones, 521 So.2d 530, 531 (La.App. 4th Cir.1988) (citations omitted). Further, to be compensated, the claimant’s mental anguish “must be a real mental injury; the usual worry or inconvenience over the consequences of property damage will not justify an award for mental anguish.” Id.
Here, the record is devoid of any evidence of compensable mental anguish suffered by Mr. Sandrock. Therefore, we find that the trial court abused its discretion in awarding $25,000.00 to Mr. San-drock in general damages. This award is reversed.
CONCLUSION
For the foregoing reasons, we amend the judgment and now render judgment in *1047 favor of Mr. Sandrock and against SBPG for $41,636.00, with interest thereon at the legal rate from date of judicial demand, until paid, and all costs of these proceedings.
| ^AFFIRMED IN PART; REVERSED IN PART; RENDERED
LOMBARD, J., concurs in the result.
LOMBARD, J., concurs in the result,
Li respectfully concur.

. Section 102.6 of the St. Bernard Parish Code of Ordinances.

. It is unclear whether this was a misstatement by Mr. Sandrock. Presumably, he meant March 2008.